IN THE COURT OF APPEALS OF NORTH CAROLINA

 2021-NCCOA-562

 No. COA20-869

 Filed 19 October 2021

 Office of Administrative Hearings, No. 20 OSP 01463

 VELMA SHARPE-JOHNSON, Petitioner,

 v.

 NC DEPARTMENT OF PUBLIC INSTRUCTION EASTERN NORTH CAROLINA
 SCHOOL FOR THE DEAF, Respondent.

 Appeal by Petitioner from final decision entered 28 September 2020 by

 Administrative Law Judge William T. Culpepper, III, in the Office of Administrative

 Hearings. Heard in the Court of Appeals 8 September 2021.

 Jennifer J. Knox for Petitioner-Appellant.

 Attorney General Joshua H. Stein, by Assistant Attorney General Stephanie C.
 Lloyd, for Respondent-Appellee.

 COLLINS, Judge.

¶1 Petitioner Velma Sharpe-Johnson appeals from a Final Decision of the Office

 of Administrative Hearings affirming her dismissal from her position as an

 Educational Development Assistant by Respondent North Carolina Department of

 Public Instruction, Eastern North Carolina School for the Deaf. Petitioner argues

 that “the trial court err[ed] in determining that there was substantial evidence to

 prove that the Petitioner committed the alleged conduct[.]” Because substantial
 SHARPE-JOHNSON V. N.C. DEP’T OF PUB. INSTRUCTION

 2021-NCCOA-562

 Opinion of the Court

 evidence in the whole record supported the findings that Petitioner engaged in grossly

 inefficient job performance and unacceptable personal conduct, we affirm.

 I. Procedural History

¶2 Respondent dismissed Petitioner from employment on 19 December 2019 and

 issued a final agency decision affirming the dismissal on 24 March 2020. Petitioner

 timely filed a petition for a contested case hearing in the Office of Administrative

 Hearings.

¶3 On 28 September 2020, an Administrative Law Judge (“ALJ”) issued a Final

 Decision affirming Respondent’s dismissal of Petitioner. Petitioner exhausted the

 agency processes to grieve the dismissal. Petitioner timely gave notice of appeal to

 this Court.

 II. Factual Background

¶4 The Eastern North Carolina School for the Deaf (“ENCSD”) serves both day

 students and residential students. Residential students arrive at the school on

 Sunday afternoon, remain on campus throughout the school week, and return home

 on Friday afternoon. ENCSD operates bus routes to pick up residential students on

 Sundays and return them home on Fridays. Each bus is staffed by two ENCSD

 Educational Development Assistants; one serves as the driver and the other as the

 bus monitor. The bus monitor is responsible for recording departure times, arrival

 times, and student attendance in real time on a “route sheet.” The busses contain a
 SHARPE-JOHNSON V. N.C. DEP’T OF PUB. INSTRUCTION

 2021-NCCOA-562

 Opinion of the Court

 GPS supplied by the school that is supposed to blink red and beep if the bus exceeds

 55 miles per hour.

¶5 Petitioner was a career state employee employed by ENCSD as an Educational

 Development Assistant. Petitioner’s responsibilities included “[d]riving ENCSD

 vehicles for student transportation and maintaining a non-expired NCDMV

 operations license,” “complet[ing] all necessary training regarding the operation of

 state vehicles,” supervising students being transported, and “providing safe and

 secure travel to and from ENCSD.”

¶6 In August 2019, Petitioner signed a “Statement of Understanding – 2019-2020”

 containing the following acknowledgements:

 I am aware that the NC DPI Education Services for the
 Deaf and Blind’s Policy and Procedures Manual, NC DPI
 Policies and Procedures, [and] the OSHR State Human
 Resources Manual . . . [are] available to me on the ENCSD
 Intranet and/or the NC Dept of Public Instruction’s website
 and/or upon request to my manager or Human Resources.

 I recognize that I am responsible for reading/viewing these
 policies and for making myself familiar/knowledgeable of
 all OSHR, ESDB, NC DPI policies as they may relate to my
 employment.

 I agree to conduct my activities in accordance with all
 Education Services for the Deaf and Blind’s and DPI
 procedures and policies and understand that breaching
 these standards may result in disciplinary action up to and
 including dismissal.

 Web addresses to the aforementioned policies and
 procedure[s] have been provided to me during the Human
 SHARPE-JOHNSON V. N.C. DEP’T OF PUB. INSTRUCTION

 2021-NCCOA-562

 Opinion of the Court

 Resources, New Employee Orientation presentation.

 The Education Services for the Deaf and Blind Policies included a requirement that

 “[s]taff transporting students shall meet all the requirements and safety regulations

 of the Department of Motor Vehicles and the Department of Public Instruction.”

¶7 Petitioner also participated in a training for ENCSD transportation staff at the

 beginning of the 2019-20 school year. At the training, Petitioner received a “North

 Carolina School Bus Driver Handout” which stated:

 According to G.S. 20-218(b):

 It is unlawful to drive a school bus occupied by one or more
 child passengers over the highways or public vehicular
 areas of the State at a greater rate of speed than 45 miles
 per hour.

 It is unlawful to drive a school activity bus occupied by one
 or more child passengers over the highways or public
 vehicular areas of North Carolina at a greater rate of speed
 than 55 miles per hour.

¶8 Debra Pierce, first shift transportation coordinator for ENCSD, received a

 phone call at approximately 3:00 pm on Friday, 22 November 2019, from a person

 who identified himself as Terry Grier. According to Pierce, the caller

 said he was calling out of concern, that there was a bus on
 I-40. He identified the bus as a white activity bus that had
 Eastern North Carolina School for the Deaf on the side,
 Bus Number 34. And he said it was going at a high rate of
 speed, occupied by one or more passengers.

 The caller informed Pierce that he “was observing the bus going at a high rate . . . of
 SHARPE-JOHNSON V. N.C. DEP’T OF PUB. INSTRUCTION

 2021-NCCOA-562

 Opinion of the Court

 speed, between 80 and 85” and “at some points 90 to 95 miles per hour” with at least

 two passengers on board the bus. In the video, the caller can be heard stating:

 I am riding down Interstate 40, this is activity bus number
 34, it says that it’s from the Eastern NC School for the
 Deaf, Wilson County, my speedometer . . . is averaging
 between 80 and 90 miles per hour, looks like there is a
 driver and at least two passengers on the van, it seems to
 be going pretty fast for an activity bus on the interstate.

¶9 Based on the time of the call and the direction of travel, Pierce concluded that

 the bus was en route to the final stop in Supply, North Carolina. Pierce knew that

 Petitioner, ENCSD employee Sheeneeka Settles, and a student passenger were on

 Bus 34 at that time. Pierce went to the office of Dr. Michele Handley, director of

 ENCSD, and called the bus cell phone. Settles answered the phone and confirmed

 that Petitioner was driving the bus.

¶ 10 According to the route sheet from 22 November 2019, Bus 34 left the stop in

 Warsaw, North Carolina at 2:32 pm with one student on board and arrived at the

 Supply stop at 3:49 pm. Pierce testified that the bus was not scheduled to arrive at

 the Supply stop until 4:15 pm.

¶ 11 On 2 December 2019, ENCSD placed Petitioner on investigatory leave with

 pay. That day, Pierce spoke with Petitioner. According to Pierce, Petitioner denied

 driving 80 to 85 miles per hour but “admit[ted] to speeding up a little over 55 to pass

 a vehicle that was in front of her” and acknowledged that one student was on the bus.
 SHARPE-JOHNSON V. N.C. DEP’T OF PUB. INSTRUCTION

 2021-NCCOA-562

 Opinion of the Court

 In a handwritten note on the bottom of the letter informing Petitioner of the

 investigatory leave, Petitioner wrote, “I was not going 80 mph, I pass and had to speed

 up to pass, and when I try to get back over the car speeded up and would not let me

 over . . . . I have [a] CDL and would not take that chance of losing my CDL.”

¶ 12 During the investigation, on Friday, 13 December, Pierce drove Bus 34 on the

 same route that Petitioner had driven on Friday, 22 November. Settles rode with

 Pierce and completed the route sheet. Pierce departed the stop in Warsaw at 2:30 pm

 and arrived at the stop in Supply at 4:15 pm. Pierce also spoke with Settles during

 the investigation. According to Pierce, Settles indicated that she was looking out the

 window and not paying attention to Petitioner’s driving, and that she did not see the

 GPS red light or hear the beeping.

¶ 13 Respondent held a predisciplinary conference on 18 December 2019 at which

 Petitioner insisted that she had not driven over 55 miles per hour. ENCSD dismissed

 Petitioner effective 19 December 2019 based on both grossly inefficient job

 performance and unacceptable personal conduct of “exceed[ing] a speed of 55 mph

 while operating a student and staff occupied” ENCSD activity bus, which violated

 N.C. Gen. Stat. § 20-218 and Education Services for the Deaf and Blind Policies, and

 created “the potential to cause death or serious bodily injury.”

¶ 14 After Respondent’s final agency decision upholding the dismissal, Petitioner

 filed a petition for a contested case hearing. Following a hearing, the ALJ found that
 SHARPE-JOHNSON V. N.C. DEP’T OF PUB. INSTRUCTION

 2021-NCCOA-562

 Opinion of the Court

Petitioner had engaged in the alleged conduct by “operat[ing] ENCSD bus #34,

traveling on Interstate 40, at a speed in excess of 55 miles per hour which is in

violation of N.C.G.S. § 20-218(b)” and the Education Services for the Deaf and Blind

Policies. The ALJ found that Petitioner’s conduct amounted to grossly inefficient job

performance and unacceptable personal conduct as follows:

 21. . . . [D]riving at a speed that exceeds the set limit
 increases the risk that the driver will lose control of the
 vehicle while trying to adapt to changing road conditions.
 In turn, this increased risk creates further potential for
 death or serious bodily injury to the driver, the passengers
 entrusted to the driver’s care, and everyone else sharing
 the road with him or her.

 22. Petitioner’s conduct of driving an ENCSD bus at a
 grossly excessive speed over the 55 miles per hour speed
 limit was a gross failure of Petitioner to perform her job
 requirements as specified by management. By Petitioner’s
 own admissions, it was an expectation of her job not to
 exceed 55 miles per hour while driving a bus. . . .

 23. Petitioner’s driving of an ENCSD bus at an average
 speed in excess of 70 miles per hour for a distance of 90
 miles and for a time period of 1 hour and 17 minutes
 created the potential for death or serious bodily injury to
 her fellow employee, Ms. Settles, members of the public,
 and a member of the ENCSD student population over
 whom Petitioner had responsibility.

 ....

 26. Petitioner’s conduct falls within the first category of
 unacceptable personal conduct. Given the inherent risks
 associated with Petitioner’s conduct, most significantly,
 the increased risk of death or serious bodily injury to a
 member of the student population entrusted to her care, no
 SHARPE-JOHNSON V. N.C. DEP’T OF PUB. INSTRUCTION

 2021-NCCOA-562

 Opinion of the Court

reasonable person should expect to receive a prior warning
for such conduct.

27. Petitioner’s conduct falls within the second category of
unacceptable personal conduct. Petitioner’s conduct was a
violation of state law, to wit: N.C.G.S. § 20-218(b), which
makes it unlawful to operate a school activity bus occupied
by one or more child passengers over the highways or
public vehicular areas of North Carolina at a greater rate
of speed than 55 miles per hour.

28. Petitioner’s conduct falls within the third category of
unacceptable personal conduct. By Petitioner’s own
admissions and testimony, she violated known or written
work rules. Petitioner repeatedly admitted that she was
not to drive a bus more than 55 miles per hour during the
performance of her work duties. . . .

29. Petitioner’s conduct falls within the fourth category of
unacceptable personal conduct. . . .

....

30. Here, Petitioner’s conduct had the potential to
detrimentally impact Respondent’s mission and legitimate
interests of providing educational programs to deaf and
hard of hearing students while simultaneously promoting
their safety and wellbeing.

....

31. . . . Petitioner’s conduct of far exceeding the required
55 miles per hour speed limit while transporting a student
was potentially detrimental to Respondent’s mission and
legitimate interests and, thus, was conduct unbecoming of
a state employee and detrimental to state service.
 SHARPE-JOHNSON V. N.C. DEP’T OF PUB. INSTRUCTION

 2021-NCCOA-562

 Opinion of the Court

 The ALJ concluded that Petitioner’s grossly inefficient job performance and

 unacceptable personal conduct amounted to just cause for dismissal and affirmed

 Petitioner’s dismissal. Petitioner appeals.

 III. Discussion

¶ 15 Petitioner challenges the ALJ’s finding that she engaged in the alleged

 conduct.

¶ 16 A career state employee subject to the North Carolina Human Resources Act

 may only be discharged “for just cause.” N.C. Gen. Stat. § 126-35(a) (2020).

 “Determining whether a public employer had just cause to discipline its employee

 requires two separate inquiries: first, whether the employee engaged in the conduct

 the employer alleges, and second, whether that conduct constitutes just cause for the

 disciplinary action taken.” N.C. Dep’t of Env’t & Nat. Res. v. Carroll, 358 N.C. 649,

 665, 599 S.E.2d 888, 898 (2004) (quotation marks, brackets, and citation omitted).

 We review de novo the conclusion that an employer had just cause to dismiss an

 employee. Id. at 666, 599 S.E.2d at 898.

¶ 17 Where a party contends that a final decision was unsupported by substantial

 evidence, “the court shall conduct its review of the final decision using the whole

 record standard of review.” N.C. Gen. Stat. § 150B-51(b)(5), -51(c) (2020). “Under

 the whole record test, the reviewing court must examine all competent evidence to

 determine if there is substantial evidence to support the administrative agency’s
 SHARPE-JOHNSON V. N.C. DEP’T OF PUB. INSTRUCTION

 2021-NCCOA-562

 Opinion of the Court

 findings and conclusions.” Henderson v. N.C. Dep’t of Hum. Res., 91 N.C. App. 527,

 530, 372 S.E.2d 887, 889 (1988) (citation omitted). Substantial evidence “means

 relevant evidence a reasonable mind might accept as adequate to support a

 conclusion.” N.C. Gen. Stat. § 150B-2(8c) (2020). Unchallenged findings of fact are

 binding on appeal. Koufman v. Koufman, 330 N.C. 93, 97, 408 S.E.2d 729, 731 (1991).

¶ 18 Petitioner argues that there was not substantial evidence in support of the

 determination that she violated N.C. Gen. Stat. § 20-218 because Bus 34 was neither

 a “school bus” nor an “activity bus” as defined in N.C. Gen. Stat. § 20-4.01(27)(m) and

 (n). Petitioner’s argument is misguided.

¶ 19 The ALJ found “that ENCSD bus #34 is a school activity bus as defined in

 N.C.G.S. § 20-4.01(27)(m).” A school activity bus is defined as “[a] vehicle, generally

 painted a different color from a school bus, whose primary purpose is to transport

 school students and others to or from a place for participation in an event other than

 regular classroom work.” N.C. Gen. Stat. § 20-4.01(27)(m) (2020). A school bus is

 defined, in part, as “[a] vehicle whose primary purpose is to transport school students

 over an established route to and from school for the regularly scheduled school day .

 . . that is painted primarily yellow below the roofline. . . .” Id. § 20-4.01(27)(n).

¶ 20 Evidence presented at the hearing showed that the vehicle driven by Petitioner

 was “a white activity bus” that is “one of the shorter buses” that the school has. The

 words “Eastern North Carolina School for the Deaf” and the number “34” were visible
 SHARPE-JOHNSON V. N.C. DEP’T OF PUB. INSTRUCTION

 2021-NCCOA-562

 Opinion of the Court

 on the side of the bus.

¶ 21 Petitioner argues that because the bus was being used to transport a child

 home from the school, the bus did not fit the definition of an activity bus. Specifically,

 Petitioner argues that “[w]hile bus #34 looked like a school activity bus, its primary

 purpose was to transport students to and from school over an established route for

 their regularly scheduled school day.” However, the evidence at the hearing was that

 the bus was being used to pick up residential students from various stops in

 southeastern North Carolina on Sundays, transport them to the school grounds

 where they resided until Friday afternoons, and then transport them back to

 southeastern North Carolina. At the time in question, Bus 34 was not being used to

 transport a student to and from school for the regularly scheduled school day but was

 instead being used to transport a student from their place of residence at the school

 to their place of residence at home, outside of the regularly scheduled school day, on

 a route which was approximately six and a half hours round trip. Furthermore, while

 an activity bus is a vehicle whose “primary purpose” is to transport students to and

 from events other than regular classroom work, nothing in the statute prohibits an

 activity bus from being used for other purposes, such as transporting a child to and

 from their residence for the week. There was substantial evidence in the whole record

 to support the ALJ’s finding that Bus 34 was an activity bus as defined in section

 20-4.01(27)(m).
 SHARPE-JOHNSON V. N.C. DEP’T OF PUB. INSTRUCTION

 2021-NCCOA-562

 Opinion of the Court

¶ 22 Substantial evidence in the whole record otherwise supports the ALJ’s findings

 that Petitioner engaged in unacceptable personal conduct and grossly inefficient job

 performance. Pierce testified, and the ALJ found, that Petitioner was driving Bus 34

 with a coworker and student on board; the route sheets showed that Petitioner had

 completed the route 28 minutes faster than Pierce had; and the witness stated to

 Pierce that Bus 34 was being driven “at a high rate of speed, between 80 and 85 mph,

 and at some points going as fast as 90 to 95 mph[.]”1 The ALJ further found that “for

 Petitioner to travel the 90 miles between the Warsaw stop and the Supply stop in 1

 hour and 17 minutes on the day in question, she would have had to average a speed

 in excess of 70 mph the entire way.” This finding was supported by the ALJ’s official

 notice of the distance between the two stops, pursuant to N.C. Gen. Stat. §§ 150B-30

 and 8C-1, Rule 201, which Petitioner does not appeal. Lastly, the ALJ found that

 “Petitioner’s own admissions show that it was a requirement of her job and a known

 work rule that she was not to drive an ENCSD bus at a speed greater than 55 miles

 per hour.” Because Petitioner does not challenge this finding, it is binding on appeal.

 Koufman, 330 N.C. at 97, 408 S.E.2d at 731.

¶ 23 Petitioner contends that “[a]t no time did the GPS monitor beep or flash on the

 route the Petitioner drove” on 22 November 2019. While Petitioner testified that the

 1 The ALJ also admitted the audio portion of the recording that the witness sent Pierce

 as a present sense impression pursuant to N.C. Gen. Stat. § 8C-1, Rule 803.
 SHARPE-JOHNSON V. N.C. DEP’T OF PUB. INSTRUCTION

 2021-NCCOA-562

 Opinion of the Court

 GPS monitor did not flash, Pierce, Handley, and Petitioner herself each testified that

 the GPS devices were unreliable. Though Settles testified that she did not see the

 GPS blinking or flashing to indicate that Petitioner was speeding, the ALJ also

 received evidence that Settles had been looking out the window of the bus and had no

 view of the speedometer.

¶ 24 Petitioner also attacks the credibility of the reporting witness’ opinion that

 Petitioner reached speeds of 80 to 95 miles per hour, questions the weight the ALJ

 gave to the route sheets admitted into evidence, and contends that Respondent should

 have introduced other route sheets recorded on the Friday afternoon route. These

 arguments are unavailing because, “[l]ike the jury in a jury trial, the ALJ is the sole

 judge of the credibility of the witnesses and the weight to be given to the evidence as

 the finder of fact.” N.C. Dep’t of State Treasurer v. Riddick, 274 N.C. App. 183, 852

 S.E.2d 376, 382 (2020). Moreover, a reviewing “court applying the whole record test

 may not substitute its judgment for the agency’s as between two conflicting views,

 even though it could reasonably have reached a different result had it reviewed the

 matter de novo.” Watkins v. N.C. St. Bd. of Dental Examiners, 358 N.C. 190, 199, 593

 S.E.2d 764, 769 (2004).
 SHARPE-JOHNSON V. N.C. DEP’T OF PUB. INSTRUCTION

 2021-NCCOA-562

 Opinion of the Court

 IV. Conclusion

¶ 25 Substantial evidence in the whole record supported the ALJ’s findings that

 Petitioner engaged in grossly inefficient job performance and unacceptable personal

 conduct. The ALJ did not err by affirming Respondent’s dismissal of Petitioner.

 AFFIRMED.

 Judges ARROWOOD and JACKSON concur.